UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:24-cr-233 (SVN) |
| | : | |
| v. | : | |
| | : | |
| DENNIS JOHN HERNANDEZ | : | February 3, 2025 |

## UNITED STATES'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in aid of sentencing in the above-captioned case. As explained below, the Government respectfully asks the Court to impose a sentence of 18 months and 18 days of imprisonment, which falls within the U.S. Sentencing Guidelines range the parties calculated in the plea agreement and would be a sentence of time served, followed by a three-year term of supervised release.

### I.   FACTUAL BACKGROUND

The Government agrees with the offense conduct and relevant conduct set forth in the Pre-Sentence Report ("PSR"). PSR ¶¶ 5–37. In summary, between July 6, 2023 and July 19, 2023, Mr. Hernandez knowingly sent messages via Facebook and text messaging to kill or injure other individuals, knowing that the messages would be perceived as true threats to kill or injure other individuals. These messages contained threats to kill or injure individuals at the University of Connecticut ("UConn") and the individuals referred to in the PSR as Victim-A, Victim-B, and Victim-C.[1] Victim-C was a state court judge in another state.

For example, on July 6, 2023, the defendant sent a message via Facebook to an individual stating the following: "UConn's gonna see how accurate I am too with my targets. Especially for

---

[1] Because of the significant media attention on this case, the Government does not intend to mention at sentencing any information that could be used to identify Victim-A, Victim-B, or Victim-C, including as how the defendant is acquainted with these victims, which is contained in the PSR. *See* 18 U.S.C. § 3771 (providing that victims have "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy."). Instead, at sentencing, the Government intends to just refer to them as Victim-A, Victim-B, and Victim-C.

all the false promises they have made. Their empire is coming down soon. Go visit soon because that Burton² glass is going to be shattered soon with every single thing in it if I don't get what I deserved." The next morning, on July 7, 2023, Mr. Hernandez sent the individual another message stating, "UConn program is going to pay unless I have a package deal and I get my estate and every single thing I have worked for. The coaches and university officials want to be selfish and selective about shit, well I am too. Very. They are going to get surprised. Love you, I would recommend remaining away from there because when I go I'm taking down everything[.] And don't give a fuck who gets caught in the crossfire. I've died for years now and now it's others people turn. I'm prepared to give my life. So if I don't get to see you on the outside know I love you always[.] Not all shootings are bad I'm realizing. Some are necessary for change to happen." In an undated text message to another individual, Mr. Hernandez wrote, "I need to let loose and give them what they deserved and that's me shooting a machine gun at all of them and even if I get them keep going until my arm can't keep it up anymore. I want them all. Every coach in the program, everyone."

Through surveillance video and other witnesses, law enforcement confirmed that Mr. Hernandez had visited UConn, specifically the Burton Football Complex, on July 7, 2023. Two individuals saw Mr. Hernandez inside the building and spoke to him. Mr. Hernandez indicated he wanted to meet with a particular individual. When he was informed the individual was not there, he left a note and left the building. On July 12, a UConn employee found a hand-written note on his/her desk stating, in part, I HOPE YOU & YOUR FAMILY ARE HEALTHY & WELL. YOU HAVE ALWAYS BEEN A BLESSING FOR THIS PROGRAM AND LOOK FORWARD TO REUNITING AGAIN SOON! DJ HERNANDEZ."

---

² The Burton Family Football Complex is located on UConn's campus.

In addition to visiting UConn on July 7, 2023, Mr. Hernandez also visited a Connecticut high school that day. According to a school staff member who spoke to Mr. Hernandez while he was at the school, Mr. Hernandez appeared "disconnected" and either to be under the influence of narcotics or having mental health issues. Mr. Hernandez told the staff member, "it's about time [the school] and the [city] compensate him for all he's done." The defendant continued by stating, "I'm sick of being homeless, this needs to happen soon otherwise it will get dangerous and people may get hurt and it will happen quickly." The staff member felt very scared about these comments.

A few weeks later, on July 19, 2023, Mr. Hernandez had a text message conversation with Victim-A, Mr. Hernandez wrote, "We're taking lives if shit isn't paid up. It's been years in planning just taking notes, names and locations. They talked their way into this and it's almost point game. I know we don't play in my family. If we have to take lives or buildings we will. So just letting you know so you can be prepared for a media circus one way or another." The defendant also stated, "Lives will be lost or I will be paid. That's all. I pretty much told them and now it's on the media outlets before their buildings get shot up[.]"

Later that day, Mr. Hernandez sent additional text messages to Victim-A and wrote, in part, "I'm going for your life[.] I told you not to contact me and you did. I'm coming for you[.] See you soon . . . I'm done fucking around. You've never met anyone like me and I'm not even one of the ones you should be most worried about. Told you not to fuck with a killer[.]"

In addition, from July 18 to July 19, 2023, the defendant also posted the following messages on Facebook and Instagram containing threats against Victim-A, Victim-B, and/or Victim-C:

- "I have over 22 years of education, and have never been in trouble with the laws and am ok with going to jail for life to make these people pay for what I am going through in addition to the media for maximizing their box office exposure through the stories of others causing their promotion of the case to affect my

3

career, health, family, freedoms, and money. People owe and I'm ready to give my life to make sure everyone realizes how important progress is to me in every aspect of life. Will I kill? Absolutely. I've warned my enemies so pay upfront." (This post had the word "BULLET" and four pictures of target crosshairs superimposed over the aforementioned text).

- "With [Victim-A], the shit [he/she] did [he/she] deserves to die for and I'm coming for you and your family. I don't do shit like this so you know you done fucked up. I would take [him/her] dead or alive."

- A message directed to Victim-A, which stated, "Your life is over."

- "So [Victim-C] can I go smoke marijuana now so I don't kill you three or do you all want to keep playing doctor?"

- An image that is a collage of three pictures: a picture of individual that was intended to represent Victim-A (but was not actually a picture of Victim-A), a picture of Victim-B, and a picture of Victim-C. All three victims had a picture of target crosshairs superimposed over each of their faces. The Facebook post indicated that the song, "Funeral" by Mac Miller is playing in the background.

Later on July 19, 2023, local police went to the home where Mr. Hernandez was staying. An officer called him on the phone, and Mr. Hernandez stated he was ready to make himself heard and get back what was taken from him, and that he had a gun and would shoot any cop that came near him. He said he was ready to start killing random people and did not care anymore. The officer offered to have the police get him the help he needs, but Mr. Hernandez stated he did not need help and just wanted to be heard and was going to do whatever he had to. He then hung up the phone. Shortly thereafter, Mr. Hernandez emerged from the house. He approached officers yelling, "shoot me" and disregarded multiple commands to get on the ground. An officer deployed a taser and struck the defendant resulting in him falling to the ground, at which point he was taken into custody.

Mr. Hernandez was taken to a local hospital. At the hospital, Mr. Hernandez repeated that he was going to kill Victim-A if the police do not shoot Mr. Hernandez or if the right authorities do not step in and investigate this situation. He then began to discuss ESPN and stated, "ESPN

4

they have something coming, and any media source too. They don't want to fucking take ownership because they can ride the profit chain off of families or you know what? Now I am going to come after them too. Because we have been watching, we have been listening, we have been taking notes, of everybody that has wanted to profit and/or put their fucking mouth in and get involved in something they don't deserve to . . . I have nothing to fucking lose. I am going to take out everybody I can and have to in order to get what I deserve." Later, Mr. Hernandez went back to discussing Victim-A and stated he told Victim-A, "you deserved to die, and I am going to come and get you, period." He stated he told Victim-A that "I'm coming for [Victim-A's] life."

Police officers searched the residence where the Mr. Hernandez was staying but did not locate any weapons. To date, law enforcement does not have any evidence that Mr. Hernandez had access to any firearms.

Mr. Hernandez was later arrested that day by police and charged in charged in Connecticut Superior Court with threatening in the second degree and breach of peace in the second degree, both misdemeanors.[3] He has remained in either state or federal custody since July 19, 2023.

---

[3] Prior to the above-described events, Mr. Hernandez went to ESPN's headquarters in Bristol, Connecticut on March 23, 2023, and asked to speak to a certain sports commentator. When the defendant was turned away by security, he threw a bag containing a brick and a note over a fence and onto the property of ESPN's headquarters in Bristol, Connecticut. The note said: "To all media outlets, It's about time you all realeyes the affect media has on all family members. Since you're a world wide leader maybe you could lead how media and messages are delivered brick by brick. Clean it up! Yours truly, Dennis J. Hernandez." Around this time, the defendant also had a post on his Facebook page that stated, in part, "ESPN I already wrote my will with my tires[.] Am I making you nervous without a gun fire? Ashed or buried, my sharks are for you and those you had and married[.] Have pics of every one of you who have open your mouth foul[.]" The defendant also specifically mentioned a sports commentator by name and wrote "You're may be the dead trout[.] You'll feel how a hook catch a snake in mouth[.] Might just drag you and your bitch ass family members down south[.] Stay virtual you still have no clue how many years I've had yours calculated out[.]" He further wrote, "Now it's time to see the dangle of your feet.".

5

## II. PROCEDURAL HISTORY

On July 28, 2023, Mr. Hernandez was arrested on a federal criminal complaint charging him with felony offenses of making threatening communications, in violation of 18 U.S.C. § 875(c), and interstate stalking, in violation of 18 U.S.C. § 2261A(a)(2). Doc. Nos. 1, 9, 10. He subsequently was transferred from state custody to federal custody. PSR ¶ 4.

On October 11, 2023, the Court ordered Mr. Hernandez to undergo a competency evaluation based on his counsel's concerns about his erratic and concerning behavior, information provided by others who knew him, a preliminary mental health evaluation, and counsel's own observations that Mr. Hernandez did not appear to understand the nature and consequences of his actions or the proceedings against him. *Id.*; Doc. Nos. 20, 24. Following a competency evaluation by the Bureau of Prisons ("BOP") at FCI Butner, the medical staff determined that Mr. Hernandez suffers from several mental health issues but that he was not currently demonstrating symptoms that would render him incompetent, which they attributed to his compliance with medications and abstinence from substance abuse while in federal custody. PSR ¶ 80; Doc. No. 30 (competency evaluation). Based on the evaluation, the Court found him competent to stand trial. Doc. No. 29.

On December 18, 2025, Mr. Hernandez waived indictment and pleaded guilty to a one-count information charging him with making threatening communications, in violation of 18 U.S.C. § 875(c). PSR ¶ 1; Doc. Nos. 46–49.

Mr. Hernandez faces a maximum sentence of 5 years of imprisonment, three years of supervised release, a fine up to $250,000, and a $100 mandatory special assessment. PSR ¶¶ 103, 112, 116–117. In addition, pursuant to 18 U.S.C. § 3663A, the Court must order him to pay restitution to his victims, although in this case and as explained later in this memorandum, no victims have sought restitution. PSR ¶¶ 38, 120.

## III. GUIDELINES CALCULATION

The PSR calculated Mr. Hernandez's total offense level under the Sentencing Guidelines as follows, *see* PSR ¶¶ 42–52: The PSR determined his base offense level under U.S.S.G. § 2A6.1(a)(1) is 12. Two levels are added under U.S.S.G. § 2A6.1(b)(2) because the offense involved more than two threats. Six levels are added under U.S.S.G. § 3A1.2(b) because one of the threatened individuals was a government officer or employee, specifically a state court judge. Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, resulting in a total offense level of 17.[4]

The PSR determined that Mr. Hernandez has no criminal prior criminal convictions, which places him in Criminal History Category I. PSR ¶¶ 55–57. As a result, the PSR concluded that he faces a Guidelines range of 24 to 30 months of imprisonment, a term of supervised release of one to three years, and a fine of $10,000 to $295,000. PSR ¶¶ 104, 113, 118.

The Guidelines calculation in the PSR differs from the parties' Guidelines calculation in the plea agreement. In the plea agreement, the parties agreed that the defendant's mental health condition at the time of the offense provides a basis for a downward departure under U.S.S.G. § 5H1.3, and the Government agreed that it would not object to a two-level departure pursuant to § 5H1.3. *See* Plea Agreement at 4; PSR ¶¶ 3, 109, 125. In the PSR, the probation officer concurs that such a departure can be considered by the Court. PSR ¶ 125.

Accordingly, based on the defendant's mental health condition at the time of the offense, which is described in the PSR, *see* PSR ¶¶ 79–86, and documented in the Yale School of Medicine, Department of Psychiatry report, dated July 3, 2024, *see* Doc. No. 58 (Exhibit 1), and the U.S.

---

[4] At sentencing, because Mr. Hernandez has assisted authorities by timely notifying the Government of his intention to plead guilty, the Government intends to make a motion that the Court award the third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

7

Bureau of Prison's forensic evaluation, dated January 5, 2024, *see* Doc. No. 30, the Government respectfully asks the Court to depart downward by two-levels under U.S.S.G. § 5H1.3, resulting in a total offense level of 15.

With a total offense level of 15 and Criminal History Category I, Mr. Hernandez faces a Guidelines range of 18 to 24 months of imprisonment, a term of supervised release of one to three years, and a fine of $7,500 to $75,000. PSR ¶ 109.

In the plea agreement, Mr. Hernandez agreed he would not seek a term of supervised release of less than three years. PSR ¶ 110; Plea Agreement at 5. He also agreed to certain special conditions of supervised release, as set forth in a rider to the plea agreement, which are also listed in the PSR. Plea Agreement at 5, 14–15; PSR ¶ 133.

### IV. DISCUSSION OF SENTENCING AND 3553(a) FACTORS

The Government respectfully requests that the Court impose a sentence of 18 months and 18 days of imprisonment, which, by the February 6 sentencing date, is the amount of time Mr. Hernandez will have spent in pretrial custody since his arrest on related state charges on July 19, 2023, and amounts to a sentence of time served. The Government further requests that the Court impose a three-year term of supervised release with the special conditions that the parties agreed to in the plea agreement. Such a sentence will reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and avoid unwarranted sentencing disparities, while also affording adequate specific and general deterrence to future criminal conduct, and it will take into account Mr. Hernandez's history and characteristics, his ongoing mental health issues, and his other mitigating circumstances.

In this case, Mr. Hernandez's offense was a serious one. He made repeated threats to kill others, including threats to carry out a mass shooting at UConn and threats to kill three other individuals, one of whom was a state court judge. In addition, a few months before these threats, he threw a brick with a note on ESPN's campus and made threatening posts towards ESPN and a specific sports commentator.

In making these threats, Mr. Hernandez not only intended to, but succeeded in instilling a great sense of fear, anxiety, and distress in the victims and their families. While his threats were directed to people he felt had wronged him, that is no excuse for his conduct. Whether or not Mr. Hernandez actually intended to carry out his threats, or was capable of doing so, does nothing to mitigate the emotional harm his threats inflicted on the victims who were the objects of his threats. These victims had no way of knowing whether Mr. Hernandez was capable of or intended to follow through with the threats. The Court's sentence here needs to reflect the seriousness of the offense, provide just punishment, promote respect for the law, and send a message to deter him and others from engaging in such conduct in the future.

At the same time, the Government recognizes that Mr. Hernandez's history and characteristics—which are well-outlined in the PSR—show that he has struggled for years with significant mental health issues that were not properly diagnosed or treated in an effective manner. As described in the mental health evaluations, Mr. Hernandez's mental health issues played a role in his offense conduct. It was only after he was arrested in this case that his mental health issues were properly diagnosed and addressed. These circumstances, along with his lack of any prior criminal convictions, should be considered as part of the Court's analysis of the Section 3553(a) factors.

In addition, the Court must also consider the need for rehabilitation. It appears that Mr. Hernandez's current course of treatment is appropriately addressing his mental health issues, and that the defense has provided the Court with a plan to ensure that Mr. Hernandez continues to receive treatment and address his mental health issues once he is released from prison. *See* Doc. No. 58 (Exhibit 2). With this proper treatment, Mr. Hernandez has recognized the emotional impact his threats had on his victims. As such, the Government agrees that a sentence beyond the 18 months and 18 days he has already served would not meaningfully further the goal of rehabilitation. Moreover, the special conditions of supervised release that the parties agreed to in the plea agreement—which include mental health treatment, monitoring of his electronic devices, and restrictions on visiting UConn, ESPN and other locations—have been carefully crafted to address the defendant's mental health issues, ensure he complies with treatment, and alert the Court, probation, and the parties at the earliest sign of relapse.

Finally, the Court must also consider the need for unwarranted sentencing disparities and notes that according to the Judiciary Sentencing Information ("JSIN") the average length of imprisonment for defendants who had a total offense level of 17 and Criminal History Category I was 18 months, *see* PSR ¶ 106, and was even lower for defendants with a total offense level of 15. *See* U.S. Sentencing Commission, Judiciary Sentencing Information, available at https://jsin.ussc.gov/ (last visited Feb. 3, 2025) (indicating that for defendants with an offense level of 15 and Criminal History Category I, the average length of imprisonment was 14 months for those who received a sentence of imprisonment). While the Government respectfully submits that, as a general matter, the JSIN sentencing data is not particularly informative as it is based solely on offense level and criminal history category and it does not consider any other aggravating or mitigating factors about a case, it nonetheless is something the Court may consider.

In summary, the Government submits that a sentence of 18 months and 18 days, which would be a sentence of time served, followed by a three-year term of supervised release with the special conditions agreed to in the plea agreement, appropriately balances the 3553(a) factors the Court is required to consider and provides for just punishment in this case.

V. **RESTITUTION, FINES AND ASSESSMENTS**

Restitution: Under 18 U.S.C. § 3663A, a district court is required to award restitution to victims. To date, no victims have requested restitution, and the Government does not anticipate any restitution requests.

Special Assessment: Mr. Hernandez must pay a special assessment of $100 under 18 U.S.C. § 3013.

Fine: The PSR determined that the defendant "does not appear to have the ability to pay a fine within the guideline range." PSR ¶ 102. As such, the Government defers to the Court regarding the imposition of any fine.

[continued on next page]

## VI. CONCLUSION

For the reasons stated above, the Government respectfully asks the Court to impose a sentence of imprisonment of 18 months and 18 days of imprisonment, or time served, followed by a three-year term of supervised release with the special conditions the parties agreed to in the plea agreement.[5]

                Respectfully submitted,

                MARC H. SILVERMAN
                ACTING UNITED STATES ATTORNEY

                */s/ Neeraj N. Patel*
                NEERAJ N. PATEL
                ASSISTANT UNITED STATES ATTORNEY
                Federal Bar No. phv04499
                157 Church Street, 25th Floor
                New Haven, CT 06510
                Tel.: (203) 821-3700
                Email: neeraj.patel@usdoj.gov

---

[5] In Special Condition of Supervised Release #5 in the plea agreement (Special Condition #6 in PSR ¶ 133), Mr. Hernandez is prohibited from visiting certain locations, including any campus of the University of Connecticut. After the plea hearing, a representative from UConn contacted the Government and asked if Mr. Hernandez could also be prohibited from visiting Rentschler Field in East Harford during UConn football games. Given Mr. Hernandez's repeated threats to UConn, including threats to the football program and coaches, the Government respectfully requests that a prohibition from visiting Rentschler Field in East Harford during UConn football games be including in this special condition of supervised release.

CERTIFICATE OF SERVICE

       I hereby certify that on February 3, 2025, a copy of the foregoing Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                       */s/ Neeraj N. Patel*
                                       Neeraj N. Patel
                                       Assistant United States Attorney